**Charles E. PILLETTE, Plaintiff,**

v.

**DETROIT POLICE DEPARTMENT, Taylor Police Department, Rufus Giffin, Jr., Joseph A. Colombo, Cass S. Jaros, Mark R. Bendure, Kim R. Fawcett, and Gerald A. Sniderman, Defendants.**

No. 86–CV–73616–DT.

United States District Court,
E.D. Michigan, S.D.

June 10, 1987.

Charles E. Pillette, Jackson, Mich., pro se.

Cass S. Jaros, Detroit, Mich., Rufus Griffin, Jr., Detroit, Mich., Joseph A. Colombo, Wyandotte, Mich., pro se.

Brenda E. Braceful, Asst. Corp. Counsel, Anthony W. Candela, Detroit Police Dept., Legal Advisor Unit, Detroit, Mich., for defendant Detroit Police Dept.

Allen J. Kovinsky, Southfield, Mich., for defendant Taylor Police Dept.

Garan, Lucow, Miller, Seward, Cooper & Becker, P.C. by Thomas F. Myers, Detroit, Mich., for defendant Kim R. Fawcett.

Kitch, Saurbier, Druthas, Wagner & Kenny, P.C., Verlin R. Nafziger, Anthony G. Arnone, Detroit, Mich., for Gerald Sniderman.

Miller, Canfield, Paddock and Stone by Gilbert E. Gove, Stephen J. Ott, Julie I. Fershtman, Detroit, Mich., for defendant Mark R. Bendure.

GILMORE, District Judge.

## OPINION

The plaintiff in this case was convicted of one count of felony murder and two counts of criminal sexual conduct in the first degree in 1977. In 1980, the Michigan Court of Appeals set aside plaintiff's conviction of felony murder, and reduced the conviction to that of manslaughter. Plaintiff is currently incarcerated in the State Prison of Southern Michigan. He has filed this lawsuit pursuant to 42 U.S.C. § 1983 against the Detroit Police Department, the

Taylor Police Department, Attorney Rufus Griffin, Junior, Attorney Joseph A. Colombo, Attorney Cass S. Jaros, Attorney Mark R. Bendure, Attorney Kim R. Fawcett, and Attorney Gerald A. Sniderman. Plaintiff alleges that, in the course of his arrest, trial and appeal, these defendants conspired to deprive him of his civil rights. The case is before the Court on various motions to dismiss for failure to state a claim.

Each of the individually named defendants is an attorney who represented plaintiff at some stage of the criminal proceedings. Rufus Griffin was appointed to defend plaintiff, and represented him at the preliminary examination. Plaintiff apparently became disappointed with Griffin's representation, and his parents hired Joseph Colombo and Cass Jaros, who represented plaintiff at trial. After plaintiff's conviction, Mark Bendure was appointed to represent him on appeal. This appeal resulted in the reduction of plaintiff's felony murder conviction to manslaughter. Mark Bendure also represented plaintiff with regard to his resentencing for manslaughter. However, Mr. Bendure and plaintiff reached a point of disagreement on how to proceed with plaintiff's appeal, and Mr. Bendure was allowed to withdraw. Next, Kim Robert Fawcett, of the Michigan State Appellate Defenders' Office, was appointed to represent plaintiff with regard to resentencing. Finally, Gary Sniderman, of the Michigan State Appellate Defenders' Office, was appointed to represent plaintiff in his appeal of his resentencing.

■ With the exception of Joseph Colombo, who has not been served with process, each of the attorney defendants has filed a separate motion to dismiss for failure to state a claim. Each of these defendants argues that plaintiff cannot state a Section 1983 claim against him because the Supreme Court has held that a criminal defense attorney does not act under color of state law in his or her representation of the accused client. Each of these defendants also argues that plaintiff cannot satisfy the "under color of state law" requirement by alleging that the attorneys conspired with

officials (judges and police) who acted under color of state law because plaintiff's conspiracy allegations in this case are vague, conclusory, and without factual basis. The Court agrees that plaintiff has failed to state a cause of action pursuant to Section 1983 against these attorney defendants.

The essential elements of a claim under 42 U.S.C. § 1983 are that the conduct complained of (1) was committed by a person acting under color of state law, and (2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). In this case, plaintiff cannot establish that the defendant attorneys involved in his criminal defense and appeal acted under color of state law.

In *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), the Supreme Court noted that privately retained criminal defense counsel perform a private, not an official, function:

> In our system a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interests of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318–19, 102 S.Ct. at 450.

The *Polk County* Court held that this was true even of the state-appointed and state-paid public defender. The Court said that, once a lawyer undertook the representation of an accused, the duties and obligations were the same whether the lawyer was privately retained, appointed, or served in a legal aid or defender program. The court held that, even though a public defender is paid by the state, he or she does not act under color of state law in

representing the accused. Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free of state control. Under *Polk County v. Dodson,* none of the attorney defendants in this case, whether privately retained, appointed, or employed by the Michigan State Appellate Defenders Office, can be found to have acted under color of state law in his representation of the plaintiff.

Plaintiff points out, however, that, despite the *Polk County* rule that defense attorneys do not act under color of state law in the normal course of conducting the defense, adequate allegations of conduct "under color of state law" may be made out where an otherwise private person conspires with state officials to deprive another of federal rights. *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984). If the attorney defendants in this case conspired with state officials acting under color of state law, then their actions were under color of state law notwithstanding the holding of *Polk County v. Dodson.* However, the plaintiff has not stated a claim of conspiracy sufficient to withstand a motion to dismiss, and, therefore, the conspiracy allegations do not suffice to satisfy the requirement that the attorney defendants acted under color of state law.

■ A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. A plaintiff alleging conspiracy must show that there was a single plan, that the alleged conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks,* 771 F.2d 935 (6th Cir.1985).

■ A prisoner *pro se* complaint is held to less stringent standards than formal pleadings drafted by lawyers, and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Estelle v. Gamble,* 429 U.S. 97, 97

S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, vague and conclusory allegations of conspiracy, unsupported by any *facts* suggesting a conspiracy, are insufficient to state a Section 1983 claim, even under the liberal standard of *Haines.* *Briscoe v. LaHue,* 663 F.2d 713 (7th Cir.1981), *aff'd* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). As Judge Coffin wrote in *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977), *cert. denied* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978):

> In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts.

The facts referred to must be ones that show a conspiracy, or from which a conspiracy can be inferred. *Shaffer v. Cook,* 634 F.2d 1259 (10th Cir.1980), *cert. denied* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1980); *Cole v. Gray,* 638 F.2d 804 (5th Cir.1981), *cert. denied* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 120 (1981). In *Shaffer,* the plaintiff had seen his defense attorneys speaking to the judge prior to his hearings. The court held that this raised no factual question of conspiracy since there were no facts to indicate that the judge and attorneys acted outside the confines of the normal judicial process. In *Cole,* the plaintiff alleged that certain executives and legislators had a motive for harming him and had had several contacts. The court held that these facts alone did not raise any fact question as to the existence of a conspiracy. In the case at bar, the plaintiff has spent many, many pages stating "with specificity the facts that, in [his] mind, show the existence and scope of the alleged conspiracy." Despite the dozens of pages of allegations put forth in

plaintiff's complaint, and responses to the instant motions, plaintiff has failed to state a claim of conspiracy to violate civil rights that can withstand a motion to dismiss, given the law as stated in *Hooks v. Hooks, supra; Briscoe v. LaHue, supra; Slotnick v. Staviskey, supra; Shaffer v. Cook, supra,* and *Cole v. Gray, supra.*

Many of plaintiff's factual allegations involve the events surrounding his arrest. On October 6, 1976, plaintiff's girl friend, Scarlett Smith, called the Detroit Police from a K–Mart store to report that her three year old daughter was missing, and possibly kidnapped, from her car in the parking lot. Plaintiff met Ms. Smith at the K–Mart, and both of them were escorted to the Sixteenth Police Precinct for questioning concerning the kidnapping. When the questioning revealed what plaintiff calls non-incriminating time and place discrepancies (he and Ms. Smith told differing stories of what they had done together the previous day), police arrested plaintiff on suspicion of murder. Eventually, both plaintiff and Ms. Smith confessed to beating Ms. Smith's little daughter to death on the previous day, placing her body in a Coleman Cooler in plaintiff's garage, and devising the kidnap story to attempt to cover up the murder.

Plaintiff alleges a detailed chronology of events surrounding his arrest and questioning, designed to show that the Detroit Police searched his house before his confession and before they had a search warrant, and that the Detroit Police passed on the information gathered to the Taylor Police, who obtained a search warrant. Whatever the merits of these allegations as to raising a question of fact that a conspiracy existed between the two police departments, they have absolutely nothing to do with the individually-named attorney defendants. Even the plaintiff, in his response brief to the Bendure motion, states that these allegations show a conspiracy *by the officers of the two police departments, and the Wayne County Prosecutor.* Plaintiff does not allege that the attorneys, none of whom were yet involved in the case, had anything to do with these events.

Next, plaintiff alleges that Judge Canham instituted a "trial conspiracy" by arranging for a racially balanced court. Not only is this allegation difficult to understand, it also has nothing to do with any agreement involving the attorney defendants in this lawsuit.

Next, plaintiff alleges that his trial attorneys failed to file certain suppression motions, failed to object to certain evidence, waived a hearing on the admissibility of his confession, failed to impeach police officer perjury, agreed to incorrect jury instructions, and failed to obtain certain discovery. Plaintiff conclusorily alleges that these alleged failures of trial counsel advanced a conspiracy. However, as in *Schaffer v. Cook* and *Cole v. Gray,* nothing in these alleged facts indicates that the judge and the attorneys had any agreement or in any way acted outside the confines of the normal judicial process. Plaintiff cannot raise a factual question as to the existence of a conspiracy between trial judge and counsel by merely throwing the word "conspiracy" at the decisions of trial counsel.

The Court concludes that, even holding plaintiff's complaint to the generous standards governing *pro se* pleadings, and taking his factual allegations as true, plaintiff has failed to allege any facts that would support his conclusory allegations of conspiracy. The vague and conclusory allegations of conspiracy cannot withstand a motion to dismiss. Therefore, plaintiff cannot show that the attorney defendants acted under color of state law by virtue of having conspired with officials who themselves acted under color of state law. Without the conspiracy allegations to provide the "under color of state law" element of a Section 1983 claim, plaintiff fails to state a claim against the attorney defendants who, pursuant to *Polk County v. Dodson,* did not act under color of state law in the normal course of representing the plaintiff in his criminal defense and appeal. Plaintiff has failed to state a cause of action as to the individual attorney defendants, and the case must be dismissed as to them.

The remaining defendants are the Taylor Police Department and the Detroit

Police Department. The Detroit Police Department filed a motion to dismiss, arguing that it was immune from suit under the Michigan law of sovereign immunity. As plaintiff correctly points out, this argument must fail because the question of immunity under Section 1983 is a question of federal, not state, law. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). The Michigan law of sovereign immunity simply does not apply in a lawsuit brought under Section 1983. Neither can the Detroit Police Department succeed in its argument that, under state law, it is not an entity amenable to suit. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), established that municipalities and municipal entities are persons subject to suit under Section 1983. *See,* Schwartz and Kirklin, *Section 1983 Litigation: Claims, Defenses and Fees,* § 5.2 (1986).

■ Nonetheless, plaintiff's claims against the Detroit and Taylor Police Departments must also be dismissed. Although *Monell* held that local government units are "persons" subject to suit under Section 1983, it also established that local government units are not liable under Section 1983 for the torts of their employees on a *respondeat superior* basis. 436 U.S. at 691, 98 S.Ct. at 2036. Local government units are not vicariously liable for the acts of their employees. Rather, local government units are liable only for their own acts; that is, for acts that they have officially ordered or sanctioned:

> Local governing bodies ... can be sued directly under § 1983 ... where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," ... may be sued for constitutional depriva-

tions visited pursuant to governmental "custom" ...

436 U.S. at 690–91, 98 S.Ct. at 2035–36.

■ In the case at bar, plaintiff has failed to allege any custom or policy of the Detroit or Taylor Police Departments that led to his alleged constitutional deprivation. Plaintiff has alleged only actions by individual police officers, and has not related them to any policy statement, ordinance, regulation, decision, or custom of their respective police departments. Therefore, there is no basis upon which these municipal entities can be found liable under Section 1983.

Plaintiff has correctly argued that even a single action by a governmental decision maker can represent an act of official government policy sufficient to give rise to municipal liability under Section 1983. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). However, municipal liability for single actions is strictly limited:

> We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

475 U.S. at ——, 106 S.Ct. at 1300, 89 L.Ed.2d at 465.

Plaintiff has not alleged that the individual Detroit and Taylor officers who investigated him were decision makers responsible for establishing final policy with respect to such investigations. This is not a case like *Pembaur* where the decision about how to handle the service of two capiases was made by the County Prosecutor, the final decision maker with regard to such matters. Rather, in the case at bar, all plaintiff has alleged—and all plaintiff can allege—is the conduct of an investigation by individual subordinate officers, not by policy or decision makers. Therefore, plaintiff has failed to state a claim upon which relief can be granted against the Taylor Police Department or the Detroit

Police Department, and these defendants must also be dismissed.

Plaintiff moved for appointment of counsel. The Court is convinced that such an appointment was not necessary. Plaintiff was capable of filing lengthy pleadings on his own behalf, of citing appropriate case law, and of making quite sophisticated legal arguments. It is clear to the Court that plaintiff understood his case, the relevant case law, and the arguments he needed to make.

Therefore, and for all of the above reasons, plaintiff's motion for appointment of counsel is denied, and the case is dismissed as to all defendants.