Matthew COBB, Plaintiff–
Appellant/Cross–
Appellee,

v.

SATURN LAND COMPANY, INC.,
Defendant–Appellee/Cross–
Appellant.

Nos. 91–6208 & 91–6288.

United States Court of Appeals,
Tenth Circuit.

May 22, 1992.

Matthew Cobb, pro se.

Richard J. Gore and J. Jayne Jarnigan of Mahaffey & Gore, P.C., Oklahoma City, Okl., for defendant-appellee/cross-appellant.

Before MOORE, TACHA, and BRORBY, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Our jurisdiction over these related appeals arises under 28 U.S.C. § 1291. In No. 91–6208, Plaintiff appeals from the dismissal of his action challenging, on constitutional and state tort law grounds, Defendant's use of an ex parte statutory procedure by which it obtained and recorded oil and gas liens on three separate working interests held by Plaintiff. In No. 91–6288, Defendant cross-appeals from the denial of its request for attorney's fees under 42 U.S.C. § 1988. For the reasons expressed below, we affirm the district court on both rulings.[1]

## I Background

After receiving no response from Plaintiff to its demand for certain drilling and operating costs, Defendant exercised its right to obtain oil and gas liens under Okla. Stat.Ann. tit. 42, § 144, which provides that [a]ny person, corporation, or copartnership who shall, under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes ... perform labor or services, ... or who shall furnish any oil or gas well supplies ..., shall have a lien upon the whole of such leasehold ...[,] the buildings and appurtenances, the proceeds from the sale of oil or gas produced therefrom inuring to the working interest ... and upon the material and supplies so furnished....

These liens are "preferred to all other liens or encumbrances which may attach ... subsequent to the commencement of or the furnishing or putting up of any such machinery or supplies; and such lien[s] shall follow ... and be enforceable against the [encumbered] property wherever the same may be found...." *Id.* They are enforceable by civil foreclosure action within one year of filing, Okla.Stat.Ann. tit. 42, § 172, after which time they are "cancelled by limitation of law[,]" *id.* § 177.

█ Plaintiff alleges that, although Defendant's liens were never judicially enforced, he incurred two distinct injuries during the year in which they were in effect. First, the recorded liens frustrated his attempts to sell the encumbered interests when they were at maximum value. This injury, flowing from operation of the allegedly unconstitutional statutory scheme creating and implementing the liens, serves as the basis for Plaintiff's claim under 42 U.S.C. § 1983. Second, Defendant allegedly converted proceeds due Plaintiff to satisfy the debt underlying the liens. Because this injury involves action allegedly taken in violation, rather than under color, of state law, it can serve as a basis only for Plaintiff's pendent state law claim of malicious interference with contractual relations.[2] *See Lugar v. Edmondson Oil Co.,*

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

2. Plaintiff attempts to circumvent this obstacle by arguing that Defendant's conversion of the proceeds was effected pursuant to a custom or usage of the State of Oklahoma. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 169–71, 90 S.Ct. 1598, 1614–15, 26 L.Ed.2d 142 (1970) (state action may be found where act of private party was compelled by state custom or usage having

457 U.S. 922, 941–42, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982) (while challenge to state's prejudgment attachment procedures may be addressed in § 1983 action, private misuse of state procedures or violation of state law does not entail action that can be attributed to state for purposes of § 1983). The district court declined to exercise pendent jurisdiction over the state claim once the federal claim was dismissed. This decision was within its discretion, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966), and, in any event, has not been challenged on appeal.

## II  Appeal No. 91–6208

The district court dismissed Plaintiff's § 1983 claim for two separate reasons, which we review de novo. *See Ayala v. Joy Mfg. Co.*, 877 F.2d 846, 847 (10th Cir. 1989). First, relying on *Spielman–Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D.Ariz.1973), *aff'd,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974), and *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316 (3d Cir.1982), it held that filing a lien does not amount to a taking of sufficient magnitude to implicate due process protections. After the district court rendered its decision in this case, however, the Supreme Court held unequivocally that "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection. Without doubt, state procedures for creating and enforcing attachments, as with liens, 'are subject to the strictures of due process.'" *Connecticut v. Doehr*, —— U.S. ——, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991) (quoting *Peralta v. Heights Medical Ctr., Inc.*, 485 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988)) (footnote omitted). Thus, the authorities the district court relied upon have been undermined, *see id.* 111 S.Ct. at 2113 n. 4; *see, e.g., Reardon v. United States*, 947

F.2d 1509, 1518 (1st Cir.1991) (en banc), and its dismissal of Plaintiff's § 1983 claim cannot be affirmed on the basis that the incomplete or partial deprivation involved did not implicate due process guarantees.

As a second rationale, the district court held that Plaintiff's constitutional claim does not satisfy the related requirements of state action and action "under color of state law" imposed by the Fourteenth Amendment and § 1983, respectively. *See generally Lugar*, 457 U.S. at 935 & n. 18, 102 S.Ct. at 2752 & n. 18 (conduct satisfying state action requirement necessarily also establishes under color of state law element). These requirements are met where "the deprivation [is] caused by the exercise of some right or privilege created by the State" and "the party charged with the deprivation [is] a person who may fairly be said to be a state actor ... because he has acted together with or has obtained significant aid from state officials." *Id.* at 937, 102 S.Ct. at 2753. Here, as in *Lugar*, "the procedural scheme created by the [challenged] statute obviously is the product of state action." *Id.* at 941, 102 S.Ct. at 2756. The issue, therefore, is whether Defendant's "joint participation with state officials in the [challenged deprivation] is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Id.; see also id.* at 932–33, 102 S.Ct. at 2751 ("Court has consistently held that constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever officers of the State act jointly with a creditor in securing the property in dispute.").

The district court noted the "only act that could possibly be said to have been done by a state official in this case is the mere ministerial filing of a lien statement by a county clerk[,]" and concluded it was "unwilling to elevate an action that is purely ministerial, such as the filing of a lien statement, into state action for purposes of

---

the force, though not the formal guise, of law). The complete lack of specific factual allegations supporting the existence of a state custom compelling or encouraging private acts of conversion is fatal to this contention. *See Leahy v. Board of Trustees*, 912 F.2d 917, 921 (7th Cir.

1990); *cf. Hammond v. Bales*, 843 F.2d 1320, 1323 (10th Cir.1988) (attempts to establish requisite state action through implication of state actors in conspiracy must be supported by specific factual allegations).

42 U.S.C. § 1983." District court order filed April 18, 1991, at 8. Thus, the district court held the case fell within the scope of *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 157, 160–61 n. 10, 164–66, 98 S.Ct. 1729, 1734, 1735–36 n. 10, 1737–39, 56 L.Ed.2d 185 (1978) (warehouseman's private, though state-sanctioned, sale of stored goods does not give rise to actionable constitutional claim by aggrieved property owner), rather than *Lugar,* 457 U.S. at 924–25, 941–42, 102 S.Ct. at 2747, 2755–56 (creditor's use of state's prejudgment attachment procedures involving issuance of writ by court clerk and execution by county sheriff gives rise to viable § 1983 claim).

■■■ The joint participation requirement need not entail anything more than "invoking the aid of state officials to take advantage of state-created [lien] procedures." *Id.* at 942, 102 S.Ct. at 2756. Nevertheless, the private defendant must still " 'make use of state procedures with the overt, *significant* assistance of state officials' " in order to "involve state action *substantial enough* to implicate the Due Process Clause.' " *Doehr,* 111 S.Ct. at 2112 (quoting *Tulsa Professional Collection Servs., Inc. v. Pope,* 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988)) (emphasis added). We agree with the district court that the actions of the county clerk, who merely accepted and recorded the required lien materials prepared by Defendant and then issued filing notices to Plaintiff, were not substantial enough to bring Plaintiff's claim within the ambit of § 1983.

■■■ Because the question is a close one, however, we have reviewed the challenged statutory scheme for its procedural adequacy and conclude that dismissal of Plaintiff's constitutional claim is equally appropriate on this alternative basis. The pertinent statutes require public filing of a lien statement verified by affidavit, section 142, mandate prompt notice, section 143.1 (notice of lien must be mailed to owner within one business day of filing), and provide for a hearing on the merits (i.e., a civil action) at either party's instigation, sections 172, 177. Furthermore, the encumbered property is evidently subject to sale only after judgment has been rendered in favor of the lienholder. *See* sections 172, 175. Admittedly, the protection of judicial determination is afforded the property owner only after the lien is filed, and there apparently is no requirement that the lienholder post a bond to cover costs in the event the lien is ultimately held invalid. *See* section 177. However, there are two important additional factors to be considered in the present lien context that weigh in favor of the summary procedures adopted by Oklahoma.

First, although imposition of the oil and gas liens is sufficiently prejudicial to entitle Plaintiff to some procedural protections, the adverse effects that follow upon the filing of an oil and gas lien "do not amount to a complete, physical, or permanent deprivation." *Doehr,* 111 S.Ct. at 2113 (discussing attachments, liens, and similar encumbrances). While the diminished character of the deprivation would not alone be adequate reason to uphold the scheme, *see, e.g., id.* at 2114–15 (prejudgment attachment statute providing notice and expeditious postattachment adversary hearing still violates due process in light of absence of predeprivation hearing and bond requirement), it combines here with another consideration the Supreme Court recognized as particularly significant in *Doehr.* Under the Oklahoma scheme, the unpaid producer or materialman *already possesses* an oil and gas lien before anything is ever filed for purposes of implementation and enforcement. *Compare* section 144 (lien arises upon performance under contract) *with* section 146 (lien created under section 144 is enforced pursuant to other, procedural provisions in same title). This preexisting right in the encumbered property heightens the creditor's interest that motivates and justifies the summary enforcement procedures provided by the state. *See Doehr,* 111 S.Ct. at 2113 n. 4.

To summarize, in light of the heightened interest served and diminished burden imposed by the Oklahoma oil and gas lien scheme, we conclude that the admittedly incomplete procedural protections afforded

the affected property owner are nevertheless constitutionally adequate for the particular circumstances they address. *Compare id.* (similar mechanic's lien statute upheld in *Spielman–Fond* for lack of cognizable deprivation should have been approved on alternative basis that creditor's preexisting interest in encumbered property provided "a ground for upholding procedures that [were] otherwise suspect") *with id.* 111 S.Ct. at 2115 (creditor's interests served by prejudgment attachment statute did not justify ex parte procedure where attaching plaintiff "had no existing interest in [defendant's] real estate when he sought attachment[,]" but only sought "to ensure the availability of assets to satisfy his judgment if he prevailed").

### III  Cross Appeal No. 91–6288

On cross appeal, Defendant asserts the district court erred in refusing to award it attorney's fees under § 1988. The district court's decision in this regard is subject to review for an abuse of discretion. *See, e.g., Crabtree ex rel. Crabtree v. Muchmore,* 904 F.2d 1475, 1479 (10th Cir.1990).

Prevailing civil rights defendants are not entitled to fees on the same basis as prevailing plaintiffs. *See Prochaska v. Marcoux,* 632 F.2d 848, 854 (10th Cir.1980) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980)), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). Thus, as the district court explicitly recognized, Defendant may be awarded fees here only if Plaintiff's action was "frivolous, unreasonable, or without foundation." *Id.* at 853 (citing *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). In light of the significant issues raised by this case, we are not persuaded that the district court abused its discretion in denying Defendant's request for fees.

The judgments of the United States District Court for the Western District of Oklahoma in both appeals are AFFIRMED.